**Ralph VAN REENAN, Appellant,**

v.

**GOLDEN VALLEY ELECTRIC ASSOCIATION, INC., Appellee.**

No. 184.

Supreme Court of Alaska.

Feb. 11, 1963.

Rehearing Denied April 4, 1963.

Robert A. Parrish, Fairbanks, for appellant.

Mary Alice Miller of Collins & Clasby, Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

The appellant, Van Reenan (plaintiff in the court below), received injuries from electrical shock, and brought an action in tort against the Golden Valley Electric Association claiming that it was negligent in the installation and maintenance of high tension wires. The case was tried without a jury. The court found that plaintiff's own negligence had caused his injuries. It made no finding as to the alleged negligence of the Association. Judgment was entered against plaintiff and he has appealed.

Plaintiff was moving a building along a public street. A bundle of telephone lines, suspended above and across the street between the Association's transmission wire poles, caught on the ventilator on top of the building. Above the telephone lines and mounted on the same poles were the Association's electrical transmission wires, consisting of a neutral or ground wire and above that, three primary wires, one above the other, each carrying 7,200 volts of electricity. Plaintiff climbed to the roof of the building, and while attempting to disengage the telephone lines from the ventilator received an electric shock which struck him unconscious and caused severe burns on his right shoulder and on both hands, and slight burns on his right thigh. There was

**960**

no direct evidence as to the cause of the electric shock. Plaintiff's last recollection before becoming unconscious was that he had reached out with both hands for the telephone lines. A witness who had observed plaintiff on the roof testified that plaintiff picked up "an armful of wires", that there was then a puff of smoke or blaze, and that plaintiff fell down on the roof. The witness did not know what particular wire or wires plaintiff had touched.

Plaintiff contends that the telephone lines produced the shock, that this meant that the electricity had escaped into those lines from the Association's transmission wires, and that the escape of electricity established negligence on the part of the Association. Recognizing that this argument depends for its validity upon the fact that he touched only the telephone lines, and not the Association's primary wires, plaintiff argues that the evidence does not reasonably permit any other conclusion. He had testified that the telephone lines, while caught on the roof ventilator, were about three feet in front of and horizontally from the electric wires and that he had knelt in front of the telephone lines in such a position that he had to reach forward to touch them. He argues from these facts that his shoulders, one of which was severely burned, could not have been closer than three or four feet to the lowest primary wire, and therefore it would have been almost impossible for him, in lifting the telephone lines vertically, to have moved his body forward the necessary horizontal distance to make any contact with a primary wire. Plaintiff's conclusion is that the trial judge could not reasonably have found that there was any bodily contact with any of the primary wires; that it necessarily follows that plaintiff must have received the shock from the telephone lines; and that a finding that there had been no escape of electricity into the telephone lines was therefore clearly erroneous.

The judge was not required to accept plaintiff's hypothesis as to how the accident occurred. The telephone superintendent

for the Municipal Utilities System, owner of the telephone lines, testified that if high voltage current were to hit a telephone line at any place it would be transmitted to the central office where devices to protect telephone equipment would cause the current to be grounded. He said that if high voltage had hit the System's line on the day plaintiff was injured, there would have been an indication of this, both visually and audibly, in the main office, and that there was no report that any such thing had happened. Under cross examination by plaintiff's counsel, the telephone superintendent also testified that if plaintiff had picked up the telephone lines he could not have been electrocuted, and that it was only possible for him to have felt a little "tickle" of a shock during the time that ringing current was passing through the lines to a telephone.

■ In the light of this testimony, the trial judge was justified in finding that there had been no escape of electrical current from the Association's primary wires into the telephone lines. This left only the Association's transmission wires as the remaining available source of the electrical shock. Faced with this logical conclusion, plaintiff next contends that he was injured from contact with the Association's neutral or ground wire, that this meant that electricity had escaped into that wire from the primary wires, and that permitting such an escape of electricity constituted negligence on the part of the Association.

■ A conclusion that the neutral wire caused plaintiff's injuries can be reached only by speculation, rather than by the process of making a logical deduction from known facts. Where the telephone lines were concerned, plaintiff's theory that they caused the shock depended upon his being able to exclude the Association's primary wires as a possible source of injury, and he could do that only by insisting that at the time of injury the position of his body was such that it was practically impossible for him to have touched a primary wire. But plaintiff cannot logically utilize the

same reasoning to eliminate a primary wire as a source of injury, when he chooses the neutral wire as the cause of the shock. According to his testimony the neutral wire was located in front of him the same horizontal distance as the primary wires. If plaintiff had been in a position where it was possible for him to have touched the neutral wire, he would also have been in a position where it was equally possible for him to come in contact with a primary wire. There was at the most, then, a mere possibility that the neutral wire produced the shock. In that situation, plaintiff did not sustain his burden of proving that the Association had negligently permitted electricity to escape from the primary wires into the neutral wire, and that this was the cause of plaintiff's injuries.[1] The trial court did not err in finding against plaintiff on this point.[2]

Plaintiff contends that even if he had been burned by contact with the primary wire, the Association was still negligent and therefore responsible for his injuries. He argues that the Association could have reasonably anticipated that someone would be moving a building at the place where the accident took place, and therefore had a duty to either insulate its wires or put them in a position out of danger. The trial judge did not decide whether the Association was negligent in this respect. Instead, he held against plaintiff on the basis of a finding that plaintiff's own negligence was the cause of his injuries.

■ There was no direct evidence that plaintiff touched any of the Association's primary wires. But an assertion that the Association was negligent in failing to insulate those wires, or to put them in a position out of danger, postulates the fact that plaintiff did come in contact with a primary wire. In this situation, it was appropriate for the court to consider whether plaintiff was negligent and whether that negligence caused his injuries; for even if it were established that the Association had been negligent in the manner contended, plaintiff's contributory negligence would bar his recovery.[3]

■ Plaintiff was an experienced house mover. He had transported over the highways between Ladd Field and Fairbanks, Alaska approximately 300 frame buildings that had been sold as surplus by the Army. He had experienced problems with telephone and electric wires before, and had solved them by either having a man on the roof of the building he was moving, or by raising the wires to clear the roof with use of a long dry board with a stick across the end. He had previously worked for a fire department, and had experience in handling transformer fires and wires that were on the ground. He knew from experience that the neutral or ground wire in a series of electrical transmission wires was ordinarily

1. City of Fairbanks v. Schaible, Opinion No. 97, 375 P.2d 201, 204 (Alaska 1962); Briggs v. Kelly, Opinion No. 115, 376 P.2d 715 (Alaska 1962).

2. The court found that "plaintiff was burned by touching the lowest primary wire with his shoulder and the neutral wire with his hands, forming a circuit through which current flowed." Plaintiff argues this was error because there was no evidence to support such a finding. Since we have determined the plaintiff did not prove that the Association had negligently allowed a leak of electricity from its wires into the telephone lines, or into its own neutral wire, it is unnecessary to decide whether the judge was right or wrong, in stating what he considered to be the precise cause of the shock.

3. "Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, co-operating with the negligence of the defendant in bringing about the plaintiff's harm." Restatement, Torts § 463 (1934). With exceptions not relevant here, "the plaintiff's contributory negligence bars recovery against a defendant whose negligent conduct would otherwise make him liable to the plaintiff for the harm sustained by him." Restatement, Torts § 467 (1934).

the bottom wire. He knew that high tension wires, carrying 7,200 volts of electricity, were generally not insulated.

From this evidence it would be reasonable to infer that plaintiff was aware of the danger of coming in bodily contact with the Association's electric wires. With that awareness, plaintiff climbed to the roof of the building, and with only three or four feet separating him from the source of danger, attempted to lift over the ventilator of the building telephone lines weighing between seventy and eighty pounds. In these circumstances it was for the trial judge to decide whether the injuries plaintiff received from contact with the Association's wires resulted from conduct on his part which fell below the standard to which he ought to have conformed for his own safety. We cannot say that the judge was clearly erroneous in finding that plaintiff was negligent.

The judgment is affirmed.