**NATIONAL BANK OF ALASKA,**
Appellant,

v.

**Patrick J. McHUGH, Appellee.**

**No. 608.**

Supreme Court of Alaska.

June 30, 1966.

R. J. Annis, of Robertson, Monagle, Eastaugh & Annis, Juneau, for appellant.

R. Boochever, of Faulkner, Banfield, Boochever & Doogan, Juneau, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

On May 9, 1963 appellee came down the stairs from the second floor of appellant's bank and office building located in the City of Juneau. Immediately opposite the stairway on the ground floor was a plate glass window, 6' 7¾" square, set in aluminum frames. To the left of the window were two glass panel doors and then another glass window of the same size as the one opposite the stairway.

When appellee reached the bottom of the stairs he walked straight ahead and into the window, shattering the glass and suffering personal injuries. He brought this action against appellant for damages, and a jury awarded him $45,000. Appellant then brought this appeal.

Appellant's first point is that the trial court erred in denying appellant's motion for judgment notwithstanding the verdict. Appellant views the evidence as permitting reasonable minded men to reach only one conclusion: that appellee's lack of care for his own safety—his contributory negligence—was the cause of the accident, and therefore the court should have set aside the verdict and entered judgment for appellant.

Appellee had entered appellant's building through one of the two glass doors adjacent to the window he later walked into. Leaning against the window at the time were some window cleaning implements. There was evidence that appellee was in a hurry when he descended the stairs to leave the building. As he came down the stairs, three people stood between the stairway and the glass doors. Appellee spoke to one of those persons, and then walked into the glass window. The window had been washed immediately prior to the accident. It was not marked in any way to indicate that it was a window in place. At the time of the accident the cleaning implements that had been leaning against the window had been removed. Appellee testified that he thought the window he walked into was open space.

■ It is well within the realm of possibility that a large, unmarked, freshly washed window could create an illusion of space. That being so, it was appropriate for the jury, in performing its function of judging the credibility of witnesses, to decide whether to believe or disbelieve appellee when he testified that he mistook the window for open space. If the jury believed appellee, then the question for decision was whether appellee's conduct measured up to that of a reasonably prudent person under the same circumstances.[1] We believe that this question cannot be answered in the negative as a matter of law so as to require the jury's verdict to be set aside and judgment to be entered for appellant. Whether a reasonably prudent person under the circumstances would not have been deceived by the illusion of open space created by the unmarked window and would have recalled the location of the doors is a question upon which persons could justifiably have different views. One might reasonably believe that the illusion of open space created by the window was so great as to cause a reasonably prudent person under the same circumstances to mistake the illusion for reality and to be injured as a result. Whether appellee exercised proper care for his own safety was a question as to which there was room for diversity of opinion among reasonable men.[2] The trial court was correct in denying appellant's motion for judgment notwithstanding the verdict.

■ Appellant's second point is that the court erred in not granting appellant's motion for a new trial on the ground that the jury's verdict was not supported by legally sufficient evidence and was against the weight of the evidence.

In holding that the court did not err in refusing to grant appellant's motion for judgment, we applied a test of reasonableness. We held that whether appellee exercised proper care for his own safety was a question on which there was room for diversity of opinion among reasonable men. Logically, a decision of that question reached by reasonable men would be a reasonable decision. It would be inconsistent, then, for us to hold that such a decision reached by the jury was contrary to the weight of the evidence or was not supported by legally sufficient evidence, for this would be equivalent to holding that under the evidence the jury could not reasonably have decided as they did on a question upon which reasonable minds could differ.[3] We hold that no error was committed by the trial court when it denied appellant's motion to set aside the verdict and grant a new trial.

Appellant's third point is that the court erred in admitting the testimony of the witness, Horspool, who testified that the standard method of constructing and maintaining glass door assemblies and panels was to prevent an illusion of space by placing a metal bar across glass panels, or by placing decals on the glass, or by placing planter boxes with shrubs in front of the glass panels. Appellant argues that since Horspool was not an expert in the construction of glass, his testimony was incompetent.

■ Horspool admittedly was not an expert in the manufacture of glass. But he didn't testify as to that. His testimony was on the subject of standard safety practices in the building industry regarding the installation and maintenance of glass doors and associated glass panels. Horspool showed that he was qualified to testify on that subject by reason of his experience over a long period of time in the building industry. He was competent to testify as he did.

Horspool also testified that a report of the King County Washington Safety Council showed 128 glass door and panel injuries between August 1961 and September

---

1. McCoy v. Alaska Brick Co., 389 P.2d 1009, 1010 (Alaska 1964).

2. Ibid.

3. Alaska Brick Co. v. McCoy, Opinion No. 287, 400 P.2d 454, 457 (Alaska 1965).

1962, and in addition showed 40,000 such accidents in the United States during the same period. Appellant objected to such testimony but the objection was overruled. Later in the trial, upon motion by appellee's counsel, the testimony was stricken and the jury instructed to disregard it. Appellant's counsel indicated that what the judge said to the jury as to disregarding the testimony was satisfactory. Appellant now contends, as his fourth point on appeal, that the testimony was prejudicial and that this defect was not cured by instructing the jury to disregard it.

By acquiescing in and expressing satisfaction with the court's instruction to the jury, appellant waived any prejudice that may have existed by reason of the court's initial ruling allowing such testimony to be admitted.[4]

Appellant's fifth point is that the court erred in refusing to allow appellant to introduce into evidence pictures of entrances to two other buildings in the City of Juneau showing glass doors and unmarked glass panels. Appellant argues that in determining whether or not the glass panels in appellant's building constituted an unsafe condition, other glass configurations in the community should be considered.

There was no error. The evidence that appellant was attempting to introduce would not sufficiently establish what the community regarded as proper and reasonable conduct under the circumstances so as to be admissible under the rule that permits evidence of custom to be introduced.[5] Proof that two other building owners in the community maintained a situation regarding glass panels similar to that maintained by appellant would not give rise to an inference that a person of reasonable prudence would not take precautions to prevent people from walking into an unmarked glass panel. In this respect the evidence offered by appellant was not relevant to the question of whether appellant was negligent in maintaining the glass panels as it did.

The court instructed the jury that if they found from a preponderance of the evidence that appellee failed to use reasonable care for his own safety, and such failure proximately contributed to the accident and resulting injuries, that appellee would be guilty of contributory negligence and could not recover damages from appellant. As his sixth point on appeal, appellant contends that the court erred by not including in the instruction on contributory negligence the elements contained in the following excerpt from appellant's proposed instruction No. 1:

Some of the factors to consider in determining whether or not the plaintiff was contributorily negligent are (1) the characteristics of that individual— age, intelligence, experience, knowledge, physical condition, etc.,—which would affect his ability to detect dangerous conditions or appreciate the degree of hazards involved in conditions actually observed; (2) the physical facts—the extent to which the particular hazard is noticeable and the degree of alertness to avoid such a hazard reasonably called for by surrounding circumstances; and (3) the action taking place—the incidents of movement, sound and physical activities of the individual charged with contributory negligence and other persons and objects, animate and inanimate. * * * You may also consider the plaintiff's familiarity, or lack of it, with the area in question.

It was unnecessary for the court to delineate the particular factors that the jury should have considered in determining whether or not appellee was contributorily negligent. It was sufficient for the jury to be told that appellee's duty was to exercise reasonable care for his own safety— that is, such care as a reasonably prudent person would have exercised for his own

4. Davidsen v. Kirkland, 362 P.2d 1068, 1070 (Alaska 1961).

5. See Mitchell v. Knight, 394 P.2d 892, 895 (Alaska 1964).

care under the same circumstances. It is true that the court did not define "reasonable care" by adopting the standard of the reasonably prudent person, although in a separate instruction the court did define "ordinary care" as "that care which persons of ordinary prudence exercise in the management of their own affairs in order to avoid injury to others." But appellant did not object to the court's failure to define reasonable care as it related to contributory negligence, and it does not appear that such omission resulted in any prejudice to appellant. We find no prejudicial error here.

The jury awarded appellee $45,000. As his seventh point on appeal, appellant argues that the trial court abused its discretion in refusing to either order a remittitur or grant a new trial on the basis that the damages awarded were excessive..

▇▇▇ We have held that the granting or refusing of a request for a new trial is discretionary with the trial judge. We do not interfere in the exercise of that discretion except in the most exceptional circumstances and to prevent a miscarriage of justice.[6] In order for us to hold that the trial judge has abused his discretion, we would have to be left with the definite and firm conviction on the whole record that the judge made a mistake in refusing to order a remittitur or grant a new trial in response to appellant's motion.[7]

Appellee's main injury when he walked into the window was a laceration of the left leg which cut into the quadriceps muscle and its tendon where it comes into the knee. Appellee earned his living as a carpenter. There was evidence from which the jury could have found that after the injury to the left leg, appellee's earning capacity as a carpenter was appreciably reduced. He was unable without considerable pain to kneel down, to climb on scaffolds, or to do any shingling or other roof work. There was also evidence that such impairment of future earning capacity was permanent.

▇▇▇ All in all there was enough evidence of pain and suffering, of a loss of earning capacity on a permanent basis over appellee's life expectancy of 38 years, and an actual loss of earnings to reasonably justify a verdict of $45,000. The trial judge did not abuse his discretion in refusing to set aside the verdict and order a remittitur or grant a new trial.

Appellant contends as his eighth point that the trial court erred in not granting a new trial on the ground of newly discovered evidence. Such evidence, appellant claims, is found in the affidavit of S. E. Thorpe where it is stated that appellee had stopped at the Triangle Club in Juneau on the day of the accident to borrow Thorpe's car. Appellee had testified at the trial that he had not stopped at the Triangle Club that day.

▇▇▇ We find no error. In order for a new trial to be granted on the ground of newly discovered evidence certain requirements must be met. One of them is that the newly discovered evidence must be such as would probably change the result on a new trial.[8] That requirement has not been met here. Whether or not appellee had stopped at the Triangle Club

6. Montgomery Ward v. Thomas, 394 P.2d 774, 775 (Alaska 1964); Ahlstrom v. Cummings, 388 P.2d 261, 262 (Alaska 1964).

7. See Crawford v. Rogers, 406 P.2d 189, 192 (Alaska 1965); Sanuita v. Hedburg, 404 P.2d 647, 650–651 (Alaska 1965).

8. The other requirements are that the evidence must have been discovered since the trial, must be of such a nature that it could not have been discovered before trial by due diligence, must be material, and must not be merely cumulative or impeaching. Montgomery Ward v. Thomas, 394 P.2d 774, 776 (Alaska 1964).

to borrow Thorpe's car is hardly màterial and certainly would have no tendency to change the result on a new trial.

As his final point appellant contends that the trial court erred in not granting appellant's motion for relief from judgment under Civil Rule 60(b) (1).[9]

In his deposition taken prior to trial appellee testified that in going to appellant's building on the day of the accident he had driven a truck belonging to the partnership of which he was a member, had parked the truck at a service station a little more than a block away, and had walked from there up Seward Street to appellant's building. At the trial appellee testified that his recollection had been refreshed since the taking of his deposition, and that he had borrowed Thorpe's station wagon and had driven it into the driveway of appellant's building on Second Street. There were entrances to the building both on Seward and on Second Street. Appellant claims that the inference from appellee's testimony in his deposition was that he had probably used the Seward Street entrance to the building, rather than the Second Street entrance as he testified at the trial.

Appellant urges that it was surprised at the trial by the change in testimony, and that such surprise was prejudicial. However, appellant points out nothing to support such an assertion. At the trial appellant's counsel cross-examined appellee extensively regarding the conflict between his testimony on deposition and his testimony at the trial. Appellant does not show how the claimed surprise at this conflict affected appellant's substantial rights so that in the interests of justice appellant should be relieved from the judgment and a new trial ordered. The court did not err in denying appellant's motion under Civil Rule 60(b) (1).

The judgment is affirmed.

9. Civ.R. 60(b) (1) provides:
    On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
    (1) mistake, inadvertence, surprise or excusable neglect * * *.