**Michael R. BERTRAM, Appellant,**

v.

**Rex Homer HARRIS, Appellee.**

**No. 677.**

Supreme Court of Alaska.

Feb. 20, 1967.

---

George F. Boney, of Burr, Boney & Pease, Anchorage, for appellant.

George N. Hayes and James K. Singleton, of Delaney, Wiles, Moore & Hayes, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

DIMOND, Justice.

Appellant's and appellee's cars collided in a street intersection in the city of Anchorage. Appellant brought this action for personal injuries caused by the accident. The jury's verdict was in favor of appellee. Appellant has appealed, alleging 13 specifications of error on the part of the trial court. For convenience we group the asserted errors into three main categories: (1) those relating to motions for judgment and for a new trial, (2) those relating to the giving or failure to give certain instructions to the jury, and (3) those relating to the trial court's exclusion of evidence.

1. *Motions for Judgment and New Trial.*

Prior to the trial appellant moved for summary judgment. The motion was denied. Appellant claims this was error.

Appellant suffered a loss of memory as a result of the accident and had no recollection of the collision. Brooks, a passenger in appellant's car, testified by deposition that appellant's car was traveling toward Anchorage on Gambell Street at about 35 miles an hour as they approached the intersection where the collision occurred, that he observed a flashing or blinking yellow light at the intersection, that as appellant's car entered the intersection appellee's car came "shooting into the intersection" from an intersecting street on the right, and that the cars collided. Brooks stated that appellee's car was about a half a car's length away when he first saw it, and that appellee "came up too fast and so suddenly that it was all over before it started. * * *"

In a deposition appellee testified that he was traveling on Ninth Street at about 15 to 20 miles an hour, that the visibility was good, that he stopped when he got to the intersection of Ninth and Gambell Streets where there was a flashing red light facing him, that he looked to the right and left and did not see anybody and so started across the intersection, that at that moment appellant's car hit his car, and that he hadn't seen appellant's car until the collision. The accident took place at about 2:30 a. m. Appellee stated that he had eaten no supper the evening before, that he had drunk from seven to ten 1-ounce drinks of whiskey from the time he went to work at 8:00 a. m. the morning before until 2:00 a. m. of the following day, the day of the accident, and that between midnight and 2:00 a. m. he did not recall having any drinks but that he might have.

Based on the foregoing testimony found in the depositions of Brooks and appellee, appellant contends that he made a prima facie case showing: (1) that appellee had violated Title 13, Section 85, Alaska Administrative Code,[1] and Section 19–38 of the Code of Ordinances of the City of Anchorage,[2] in that he failed to observe a

---

1. 13 Alaska Adm.Code § 85 (1963), now 13 Alaska Adm.Code § 104.24 (Nov.1966), provided in pertinent part:

(a) Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal it shall require obedience by vehicular traffic as follows:

1. Flashing red (stop signal)—When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest cross walk at an intersection or at a limit line when marked, or, if none, then before entering the intersection, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.

2. Section 19–38 of the Code of Ordinances of the City of Anchorage is identical with Title 13, Section 85, Alaska Administrative Code, quoted in note 1 supra.

traffic control device, the flashing red light; (2) that appellee had violated Title 13, Section 102, Alaska Administrative Code,[3] in that he failed to yield the right of way at a stop intersection; (3) that appellee violated AS 28.35.030 [4] and Section 19–23 of the Anchorage Code [5] by driving while under the influence of intoxicating liquor; and (4) that appellee was guilty of driving his vehicle in a reckless and careless manner in violation of AS 28.35.-040(a).[6] Appellant then argues that the foregoing traffic laws, ordinances and regulations were promulgated for the protection of travelers on highways, that appellant was one of the class of persons to be protected, that his injuries were caused by appellee's violations of such laws, or-

dinances and regulations, that under our decision in Rogers v. Dubiel [7] the burden was upon appellee to justify such violations, that he failed to sustain that burden, that there was thus established a prima facie case of negligence on appellee's part which appellee failed to rebut, and therefore, that summary judgment ought to have been granted to appellant on the issue of appellee's negligence.

Appellant's argument and his reliance on Rogers v. Dubiel is based on the assumption that it was clear as a matter of fact that the accident was caused by appellee's violation of the law and therefore there were no genuine issues of fact remaining for trial.[8] That is not so. There

---

3. 13 Alaska Adm.Code § 102 (1963), now the subject matter of 13 Alaska Adm. Code § 104.53 (Nov. 1966), provided in pertinent part as follows:

 (b) Except when directed to proceed by a police officer or traffic control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop as required by section 123(d) and after having stopped shall yield the right of way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection shall yield the right of way to the vehicle so proceeding.

4. AS 28.35.030 provides:

 A person who, while under the influence of intoxicating liquor or narcotic drugs, operates or drives an automobile, motorcycle or other motor vehicle upon a public street or highway in the state upon conviction is punishable by a fine of not more than $1,000, or by imprisonment for not more than one year, or by both. Upon conviction for a second or subsequent offense in violation of this section, the offender's license, and his right to obtain a license, to operate a motor vehicle shall be suspended for a period of three years, and this suspension is in addition to any other punishment fixed by the court.

5. Section 19–93 of the Code of Ordinances of the City of Anchorage (1963) provided in pertinent part as follows:

 (a) No person who is an habitual user of narcotic drugs or who is under the influence of intoxicating liquor or any drug or the combined influence of intoxicating liquor and any drug, shall drive any vehicle within the city.

 (b) No person who is an habitual user of narcotic drugs or who is under the influence of intoxicating liquor or any drug or the combined influence of intoxicating liquor and any drug, shall be in actual physical control of any vehicle within the city.

6. AS 28.35.040(a) provides in part as follows:

 A person who drives an automobile, motorcycle or other motor vehicle upon a public street or highway in the state carelessly, heedlessly or in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection, or at a speed or in a manner so as to endanger or be likely to endanger a person or property is guilty of reckless driving, and upon conviction is punishable by a fine of not more than $1,000, or by imprisonment for a period of not more than one year, or by both.

7. 373 P.2d 295, 298 (Alaska 1962).

8. Civ.R. 56(c) provides for the entry of summary judgment "if the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

was an issue of fact as to the question of whether appellee stopped his car at the red flashing light before entering the intersection, because Brooks testified that appellee came "shooting" into the intersection and appellee testified that he had made a stop and had then proceeded across the intersection in a normal manner. There was an issue of fact as to whether appellee was guilty of driving while under the influence of intoxicating liquor. Appellant contends that because of the number of drinks that appellee admittedly had had, it follows that he was under the influence of intoxicating liquor. On the other hand, appellee testified that he was not at all "high" nor at all affected by the drinks that he had consumed. There was also an issue of fact as to whether appellee had failed to yield the right of way. Appellee pleaded, as an affirmative defense, contributory negligence on the part of appellant. Even assuming, arguendo, that appellee's entry into the intersection without seeing appellant approaching amounted to a violation of some law, ordinance or regulation relating to the driving of a motor vehicle, and established negligence on appellee's part, the contributory negligence of appellant would bar his recovery.[9] Brooks testified that appellant was driving at a speed of 5 miles an hour in excess of the posted speed limit when he entered the intersection, that appellant's car hit appellee's car, and not vice versa, and that appellant did not apply his brakes when he saw appellee's car enter the intersection. Brooks also testified that shortly before appellant entered the intersection a car passed appellant's car going between 50 and 60 miles an hour and that if "we had been going any faster we would have been in his trunk." A fact finder could infer from this that appellant was traveling at a speed in excess of the speed that Brooks testified he was traveling, that is 35 miles an hour.

■ Such testimony raised factual questions as to whether appellant had acted as a reasonably prudent person would have acted under the circumstances for his own safety, i. e., whether or not appellant was guilty of contributory negligence.[10] There were genuine factual issues to be determined at the time appellant moved for a summary judgment, and therefore the court was correct in denying the motion for summary judgment.[11]

Appellant's reliance on the case of Rogers v. Dubiel[12] is misplaced. That case dealt with a situation where a person standing on a non-travelled portion of a highway was injured when he was struck by the defendant's car which slid out of a traffic lane. We

9. Restatement (Second), Torts § 483, comment b (1965) provides:

Where the defendant's negligence consists of the violation of a statute, an ordinance, or an administrative regulation, and the action for negligence is based upon such a violation, the contributory negligence of the plaintiff ordinarily bars his recovery, as in the case of any other negligence of the defendant. Thus where, in violation of a number of different statutory provisions, the defendant is driving his automobile at an excessive speed, the plaintiff's contributory negligence in failing to exercise, for his own protection, care to avoid a collision will bar his recovery. The fact that the defendant is aware that he is violating the statute, and intends to do so, does not make his conduct intentional as to the harm to the plaintiff, within the rules stated in §§ 8A and 481. It may, however, apart from the statutes, be in intentional disregard of the high degree of risk of harm to the plaintiff, and so amount, at common law, to reckless conduct under the rules stated in §§ 500 and 503. In that case the plaintiff's contributory negligence will not bar his recovery.

10. Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm. Restatement (Second), Torts § 463 (1965). Van Reenan v. Golden Valley Elec. Ass'n, 379 P.2d 958, 961 (Alaska 1963).

11. Wilson v. Pollet, 416 P.2d 381, 383–384 (Alaska 1966); Ransom v. Haner, 362 P.2d 282, 289–290 (Alaska 1961).

12. 373 P.2d 295 (Alaska 1962).

held that in skidding out of the lane of traffic defendant violated the law, and since a collision resulted the burden of proving excuse or justification for the violation fell on the defendant and that he failed to discharge his burden. We said:

> Plaintiff had established a prima facie case when he showed that he was standing on the shoulder of the street in a location where he had a legal right to be and was injured by the departure of defendant's vehicle from the lane of traffic it was required to use. Thereafter the burden was on defendant to convince the trier of the facts that he was not negligent. [Footnote omitted][13]

The *Rogers* case is inapposite. In that case there was no issue of contributory negligence. Here such an issue exists. Even assuming for the sake of argument that appellant had established by deposition testimony that appellee violated the law by failing to yield the right of way to appellant, summary judgment for appellant would not be appropriate because there would still be the issue of appellant's contributory negligence to be decided by the trier of the facts.

At the close of the evidence, appellant moved for a directed verdict on the questions of appellee's negligence and appellant's contributory negligence. The motion was denied. Following the return of the jury's verdict, appellant made a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. This motion was also denied. Appellant maintains that in denying these motions the court erred.

■ There was no error in denying the motions for judgment. At the close of the trial there had been presented evidence on the issues of appellee's negligence and appellant's contributory negligence which was substantially the same as the evidence by deposition which the court below had considered when it denied appellant's motion for a summary judgment. Such evidence makes it clear, in our opinion, that there was room for diversity of opinion among reasonable men as to whether appellee was negligent and as to whether appellant was contributorily at fault. These were questions for the jury to decide.[14]

■ There also was no error in denying the motion for a new trial on the ground that the verdict was contrary to the clear weight of the evidence. We repeat here what we said in Ahlstrom v. Cummings:[15]

> The matter of granting or refusing a new trial rests in the sound discretion of the trial judge. We shall not interfere with the exercise of his discretion except in the most exceptional circumstances and to prevent a miscarriage of justice. The circumstances which would require our intervention do not exist here. From a review of the record we cannot say that evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust. On the contrary, we find that the issues which the jury were called upon to decide turned upon facts which were in dispute, and that there was clearly an evidentiary basis for the jury's decision. [Footnotes omitted]

## 2. *Exclusion of Evidence.*

Appellant contends that the trial court erred in refusing to allow appellant's witness, police officer Jones, to testify except as a rebuttal witness.

An order for a pretrial conference provided in part as follows:

> The attorneys in the above action are required to comply with the following in-

13. Id. at 298.

14. National Bank v. McHugh, 416 P.2d 239, 242 (Alaska 1966); McCoy v. Alaska Brick Co., 389 P.2d 1009, 1010 (Alaska 1964).

15. 388 P.2d 261, 262 (Alaska 1964).

structions with reference to the pre-trial of this case:

Prior to the pre-trial conference notice in this case, counsel are hereby directed:

\* \* \* \* \* \*

2. At least ten days prior to the pre-trial conference to meet and confer with opposing counsel to accomplish the following:

\* \* \* \* \* \*

c. Exchange lists showing the names and addresses of all witnesses \* \* \*.

The order then provided that failure to comply with the foregoing requirement, as well as others, "may result in the exclusion of \* \* \* witnesses from the trial."

Subsequent to the order for a pretrial conference, appellant served and filed a pretrial memorandum in which he listed the witnesses he intended to call. Officer Jones' name was not included. Following this, a pretrial order was issued by the court. It made no mention of witnesses.

When appellant called Jones and two others as witnesses during his case in chief, appellee objected on the ground that such proposed witnesses were not named in appellant's pretrial memorandum. The court granted a brief continuance of the trial to allow appellee an opportunity to take the depositions of their witnesses in order that he might determine whether he would need a continuance of the trial if the depositions indicated that there was need for further discovery.

Following the taking of Jones' deposition, the trial judge stated that he considered it inexcusable that Jones' name was not furnished as a witness, and that under the circumstances he would not permit appellant to call Jones in his case in chief, but only in rebuttal. Appellant claims that this ruling was error because under Civil Rule 16(e) the pretrial order, when entered, controls the subsequent course of the action and the pretrial order in this case did not require the listing of witnesses. Appellant claims that such error was prejudicial because Jones' testimony was essential to appellant's case in that it would have shown that appellee had been driving while under the influence of intoxicating liquor at the time of the accident.

In Fairbanks Publishing Co. v. Francisco,[16] a pretrial order provided:

Either party may call witnesses listed by the other. Witnesses not listed will be permitted to testify by the court where good cause of surprise, impeachment, privilege or impossibility be shown for withholding or delay in the designation thereof.

The question for decision in that case was whether the trial judge should have permitted counsel for the appellee to use three witnesses at the trial who were not named in the pretrial order. In holding that the court erred in abandoning the requirements of the pretrial order, we said:

Pre-trial procedure is intended to assist the trial judge by simplifying the issues, making necessary amendments to the pleadings, obtaining admissions, limiting the number of expert witnesses and considering and making a determination on any other matter that will aid in the fair and orderly disposition of the action. The matters specifically mentioned in the rule are not exclusive. [Footnote omitted]

A requirement that all parties disclose the names and addresses of all witnesses intended to be called works to the advantage of both sides in completing discovery proceedings, eliminating surprise and shortening the trial. The practice is commonly followed in the Federal courts and is to be encouraged in the courts of this state. [Footnote omitted]

Here the order permitted either side to call witnesses not listed upon a good cause showing of surprise, impeachment, privilege or impossibility for withholding or delay in designating the witnesses intended to be called. Counsel for Fran-

16. 390 P.2d 784, 798 (Alaska 1964).

cisco admitted that he knew he woud be calling several witnesses not named in the order for considerable periods of time prior to the commencement of the trial, but made no timely effort to disclose their names to the court and counsel for the News-Miner. Nor was any effort made to justify calling the witnesses based on the exceptions contained in the order. It was error for the trial judge to abandon the requirements of the pre-trial order under these circumstances.[17]

 That decision is controlling here. Although the pretrial order in this case said nothing about witnesses, the order for the pretrial conference made it abundantly clear that counsel should exchange lists showing the names and addresses of all witnesses, and that for noncompliance with such provision, counsel risked having witnesses not named excluded from testifying at the trial. The fact that such a requirement was made in an order for a pretrial conference, rather than in the pretrial order as in the *Francisco* case, has no significance. It is true that Civil Rule 16(e) provides that the pretrial order when entered "shall control the subsequent course of the action." But this means that the pretrial order shall be controlling only as to matters mentioned in the order which are, according to Civil Rule 16(e), a recitation of the action taken at the conference, amendments allowed to the pleadings, agreements made by the parties as to any of the matters considered, and a limitation of the issues for trial to those not disposed of by admissions or agreements of

counsel.[18] The fact that the pretrial order will control the subsequent course of the action does not mean that the court, in an effort to make pretrial procedure effective, does not have the authority to order prior to the entry of the pretrial order that the parties exchange the names of witnesses to be called at the trial and that for failure to comply with this requirement that certain sanctions be imposed.

 The provision in the order for a pretrial conference that the failure to comply with the requirement as to exchanging lists of witnesses "may result in the exclusion * * * of witnesses from the trial" reserves to the trial judge a discretion to either exclude witnesses or not depending upon the circumstances of the case. Whether or not we will interfere with such discretion as in other cases where discretion is involved, depends on whether the discretion was abused, which would be the case only if we were left with the definite and firm conviction on the record that the judge had made a mistake in deciding as he did to exclude or not to exclude a witness not listed in accordance with the order for a pretrial conference.[19]

We find no abuse of discretion here. The judge had a basis for finding it inexcusable that Jones' name was not furnished as a witness by appellant. Nearly one year before the trial, during the initial discovery proceedings in this case, appellant had served notice that the deposition of Jones was to be taken. A subpoena for Jones was issued but returned unserved. The record does not show why Jones was

17. Id. at 799.

18. Civ.R. 16(e) provides:
 The judge shall make an order (to be drawn and submitted by counsel) which shall recite the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel. The attorneys shall affix their signatures to the order with respect to the stipulations and agreements set forth

in the order. The order when entered shall control the subsequent course of the action unless modified by the judge to prevent manifest injustice. The pre-trial order shall cover such of the items in the form of order contained in the Appendix of Forms to these rules as may be appropriate, subject to such additions and modifications as the pre-trial judge may deem advisable.

19. See Sanuita v. Hedberg, 404 P.2d 647, 650 (Alaska 1965).

not subpoenaed at a later date and his deposition taken. In the deposition of police officer Moerlins, taken nearly one year prior to the trial, at appellant's instance, officer Jones was mentioned several times. Appellant knew of the possibility of Jones testifying as to appellee's physical condition, because officer Moerlins in his deposition stated that Jones drove appellee to the hospital from the scene of the accident.

In the light of this record, we see no reason which could justify appellant for the delay in designating Jones as a witness he intended to call at the trial. Appellant did not claim, nor indeed would the record support a claim if made, that appellant should be excused from compliance with the order for pretrial conference because of surprise or impossibility or some other reason justifying the failure to list Jones as a witness prior to the trial.

Appellant also assigns as error the trial court's refusal to admit into evidence a whiskey bottle found in appellee's car. In refusing to admit the bottle into evidence, the judge stated that he felt the appellant was in the same position without the bottle as with it, and that there was nothing to connect the bottle with anything that had happened at the accident. The judge also said:

> [W]hen officer Moerlins was on the stand, he held up the bottle, showed it to them. He says, 'The same amount of whiskey is in it now that was in it when I picked it up.' I can't see how in the world having the bottle physically in the possession of the jury is going to do you any more good than it is not.

■■■■ The determination of the question as to the admission or exclusion of demonstrative evidence is one within the discretion of the trial judge who has the

job of balancing the probative value of the evidence against its dangers of undue prejudice, distraction of the jury from the issues, and waste of time.[20] We find no abuse of discretion here. The existence of the bottle and the fact that it was found in appellee's car were admitted by appellee and the jury was informed of this. There was no useful purpose to serve by letting the jury take the bottle to the jury room during their deliberations.

### 3. *Jury Instructions.*

■■■ Appellant contends that the trial court erred in giving the jury Instruction No. 27, to the effect that insurance was not an issue in the case.[21] Appellant's argument is that the effect of the instruction was to indirectly inform the jury that appellee was uninsured, and that this was in contravention of the general rule that makes it improper and prejudicial to inform the jury directly or by inference that a party is insured or uninsured.

Appellant has no cause for complaint. He was the one who first brought the thought of insurance into the case. During the general questioning of the jury panel appellant asked whether any member of the panel owned any stock or interest in any corporation. When one member answered "yes", appellant inquired whether or not it was an insurance company. Appellant subsequently inquired if any member of the panel owned any stock or interest in any insurance company, whether anyone had ever been employed by an insurance company, and whether any member of the panel had ever been employed as an adjuster or investigator for an insurance corporation.

By asking these questions appellant may have conveyed to the jury the impression

---

20. McCormick, Evidence § 179, at 385–86, § 184, at 394 (1954).

21. Instruction No. 27 provided:
 You are hereby instructed that in this case neither court nor jury may be concerned with insurance. You should not even discuss the subject in

arriving at your verdict. You may not presume that the Defendant carries such insurance or that he should carry it. Your verdict must be based solely on the evidence in the case and the law as given in these instructions, without any regard whatsoever to the existence or non-existence of insurance.

that an insurance company would be required to pay any judgment recovered against appellee.[22] The effect of Instruction No. 27 was to erase such an impression from the jurors' minds which was in keeping with appellant's contention that it is improper to inform the jury either directly or indirectly that a party is insured. Thus, the judge did that which appellant contends ought to have been done, and consequently appellant has no reason to complain.

Appellant contends that the court erred in giving Instruction No. 14 on the subject of contributory negligence. In Saslow v. Rexford,[23] we spoke on the subject of contributory negligence as follows:

> Contributory negligence has been defined as consisting of 'conduct which involves an undue risk of harm to the person who sustains it.' It is one's failure to exercise reasonable prudence for his own safety when he perceives danger to himself created by another's negligence. [Footnote omitted]

Appellant contends that the evidence of contributory negligence, if any, did not meet the foregoing test.

■ We disagree. There was room for an honest difference of opinion as to whether appellant's speed in entering the intersection and his failure to apply his brakes when he saw appellee's car involved an undue risk of harm to appellant and was a failure to exercise reasonable prudence for his own safety. The issue of contributory negligence was properly submitted to the jury.

■ Instruction No. 14 also dealt with degrees of negligence.[24] We disapproved of such an instruction in Mitchell v. Knight,[25] saying:

> That portion of the instruction relating to degrees of negligence and slight negligence on the part of the appellant might have the tendency to mislead the jury into believing that appellant was subject to a higher standard of care than appellees, and thus that less proof would be required to establish appellant's contributory negligence than appellees' negligence. For this reason we disapprove of the instruction.

However, as in the Mitchell case we find no prejudice to appellant. Instruction No. 14 adequately dealt with the subject of contributory negligence according to the conventional standard of the ordinary prudent person, and the evidence of contributory negligence was such that the jury could have found appellant guilty of contributory negligence by applying the normal standard of care demanded by ordinary prudence.[26]

Appellant contends that the court erred in refusing to give appellant's proposed Instruction No. 7A on wanton and reckless conduct,[27] on the ground that there was sufficient evidence to support a jury find-

---

22. Annot., 4 A.L.R.2d 761, 793 (1949).

23. 395 P.2d 36, 41 (Alaska 1964).

24. The last paragraph of Instruction No. 14 provided:

 The degree of negligence of the parties is of no consequence; that is to say, if you find that the plaintiff was negligent, and that his negligence proximately contributed to the accident and to the resulting injuries, even though the negligence of the plaintiff was slight and the negligence of the defendant was great in proportion, still, if you find that the negligence of the plaintiff proximately contributed to the accident and the resulting injuries, the plaintiff is not entitled to recover, because recovery is barred by contributory negligence.

25. 394 P.2d 892, 896 (Alaska 1964).

26. Ibid.

27. Appellant's proposed Instruction No. 7A provided:

 Plaintiffs have alleged that they were injured not only by the negligence of the defendant, but also by the wanton or reckless conduct of the defendant. If you find that plaintiffs' injuries were a result of the wanton or reckless conduct of the defendant, then your verdict must be for the plaintiffs and against the defendant.

 A person's conduct is wanton or reckless if he voluntarily does an act know-

ing that appellee had operated his car while intoxicated, and that voluntary intoxication is a circumstance highly relevant on the issue of wanton misconduct.[28] The court declined to give the proposed instruction on the ground that it could find nothing at all in the evidence that would justify the conclusion that appellee was driving while under the influence of liquor.

Appellee admitted that between 8:00 a. m. of the day prior to the accident and 2:00 a. m. of the day of the accident he had consumed anywhere from seven to ten 1-ounce drinks of 86 proof blended bourbon whiskey, and that the most he had taken between midnight and 2:15 a. m. was two drinks. Officer Moerlins testified that when he saw appellee at the scene of the accident appellee's breath smelled of liquor. Appellee admitted that he had refused to take a balloon or blood alcohol test because in his opinion those tests would show one to be intoxicated even if he had consumed only two drinks. However, appellee said that he was willing to take any test for intoxication other than the balloon or blood tests.

There was no substantial evidence of wanton and wilful misconduct by reason of voluntary intoxication sufficient to require submission of that issue to the jury. The fact that a man consumed from seven to ten ounces of whiskey during an 18-hour period was not shown by the evidence to necessarily cause him to be intoxicated. Appellee testified that he was not intoxicated by stating that immediately preceding the accident he had no difficulty in handling or controlling his automobile, no difficulty in staying on the road in his lane of traffic, no difficulty in his vision, no difficulty walking as he walked to his car, and no difficulty with his own reactions.

There was no error in refusing to give an instruction on wanton and reckless conduct. This holding disposes of appellant's further contention that the court erred in failing to give his proposed Instruction 7B which stated that contributory negligence was not a defense available to a defendant who had acted wantonly or recklessly.

Appellant's final point is that the court erred in failing to give to the jury appellant's proposed Instruction No. 1 which provided as follows:

The defendant is the owner and driver of a vehicle which entered an arterial street or highway, to wit: Gambell Street, at the time and place of the accident, failing to yield the right of way to the vehicle in which the plaintiffs were riding, in violation of Section 19–85 of the Anchorage Code of Ordinances. Plaintiffs, having established that the accident resulted from the defendant's entering an arterial street or highway without yielding the right of way to all vehicles including the vehicle of the plaintiff approaching on such street or highway, defendant now has the burden of proving justification of said violation.

There was no error. As we have previously indicated, the question of whether appellee failed to yield the right of way to appellant in violation of law was a question for the jury to determine.

The judgment is affirmed.

ing, or having reason to know, of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of harm to the interests of another, but also involves a high degree of probability that harm will result to the interests of another. Wanton or reckless misconduct differs from intentional wrong-doing in a very important particular. While an act to be wanton or reckless must be voluntary, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from the facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless.

28. See Falls v. Mortensen, 207 Or. 130, 295 P.2d 182, 191 (1956).

RABINOWITZ, Justice (concurring).

I concur with the majority's opinion except for the issue pertaining to Officer Jones' testimony.

In my opinion Fairbanks Publishing Co. v. Francisco[1] is inapposite. There the pretrial order made specific reference to the witnesses who could be called at trial, while in the case at bar the pretrial order contained no reference to witnesses. Unlike *Francisco* there is no indication in this record that the attitude of appellant's counsel towards compliance with the court's order and with pretrial procedures in general was akin to that of Francisco's counsel.

In this case appellee's counsel had the same prior notice as did appellant's counsel of the possibility that Officer Jones could give testimony concerning appellee's purported state of intoxication. Admittedly, the superior court's order for pretrial conference required counsel, prior to the pretrial conference, to exchange lists disclosing the names and addresses of all witnesses, and further stated that failure to comply with this requirement could result in the exclusion of witnesses at trial. On the other hand, Civ.R. 16(e) explicitly provides that the pretrial order, when entered, shall control the subsequent course of action. In this case the pretrial order was silent on the question of limitation of witnesses.

If witnesses, either expert or nonexpert, are to be limited at trial, then such a limitation must, in my opinion, be made a part of the pretrial order to be binding. I am therefore of the opinion that it was an abuse of discretion to have precluded appellant's calling Officer Jones. There is nothing in the record which contradicts counsel for appellant's assertion that he relied on the fact that there was no limitation of witnesses embodied in the pretrial order. Nevertheless, I concur in the result reached by this court because appellant has failed to show that he was precluded, under the trial court's ruling, from offering Officer Jones' testimony in rebuttal.

1. 390 P.2d 784 (Alaska 1964).